## S99A1469. BOATMAN v. THE STATE.
### (527 SE2d 560)

SEARS, Justice.

Appellant Darryl Boatman appeals from his convictions on two counts of malice murder, two counts of felony murder, one count of aggravated assault, one count of armed robbery, one count of possession of cocaine, and three counts of theft by taking.[1] On appeal, Boatman contends, among other things, that the trial court erred in admitting into evidence two statements that he made to the police. Finding no merit either to these contentions or to the remaining contentions raised by Boatman, we affirm.

Boatman and one of the victims, Sylvester Dixon, lived at a motel in Waycross, Ga., that was owned and operated by a second victim, Andy Williams. Boatman and Dixon worked at the motel and at an adjacent antique shop, which was also owned by Williams. Evidence was introduced that Boatman took and sold numerous items that belonged to Williams, including coins, flatware, and silver plates. On July 3, 1997, Boatman took Williams's car without his permission, and he, along with a third victim, Alan Holmes, attempted to sell some of Williams's silver. Boatman came back to the hotel between 9:30 p.m. and 10:00 p.m., and apologized to Williams for taking his car. Dixon testified, however, that Boatman was acting very nervous. According to Dixon, Boatman stated that he was going to take a shower, but that he returned moments later with a rifle and demanded that Williams "give it up." Boatman then shot Williams, who died from his wounds. Boatman also shot Dixon and Holmes.

---

[1] The murder occurred on July 3, 1997, and Boatman was indicted on October 2, 1997. Following a jury trial, he was found guilty of the various crimes on May 21, 1998. The trial court sentenced Boatman to three consecutive terms of life imprisonment for the malice murder and armed robbery convictions, a consecutive twenty-year term for the aggravated assault conviction, a concurrent term of five years on the drug charge, and to three concurrent twelve-month terms for the theft charges. The felony murder conviction was vacated by operation of law. Boatman filed a motion for new trial on June 10, 1998, and the court reporter certified the trial transcript on July 8, 1998. The trial court denied Boatman's motion for new trial on October 20, 1998, and Boatman filed his notice of appeal on November 5, 1998. The appeal was docketed in this Court on July 1, 1999, and was submitted for decision on briefs on August 23, 1999.

Dixon survived his wounds, but Holmes did not. Two crack pipes and a .30 bullet were recovered from Boatman's motel room.

The day after the murders, Deputy Mike Adams approached Boatman while Boatman was walking southbound on a local highway. Adams testified that he approached Boatman because he fit the description of the suspect in the murders. Adams asked Boatman his name, and Boatman stated that he was "Victor Anthony." When Adams asked Boatman where he had come from and how long he had been in Waycross, Boatman responded that he had hitchhiked from Michigan and that he was "just passing through." Adams did not put Boatman under arrest at this time, but he did testify that Boatman fit the description of the suspect to the "T" and that once he saw Boatman, he knew he would detain him until he could have someone verify if Boatman was in fact the suspect. Adams testified that he told Boatman that he needed to ask him some questions, and that he asked Boatman if he would ride with him about two miles. According to Adams, Boatman agreed to do so. Adams then patted him down, and, without handcuffing him, put him in the back of the patrol car. Adams drove to the crime scene where another deputy identified Boatman as the suspect. Adams added that he then arrested Boatman, handcuffed him, and read him his *Miranda* rights. Boatman made no further statement to Adams.

While in prison, Boatman wrote a letter to a Detective Hernandez, for whom appellant previously had been a paid informant. In the letter, Boatman admitted shooting Dixon and stated that he (Dixon) should have died.

Boatman did not testify at trial, but one of his witnesses, William Connell, testified that he saw someone named Frank Mizell with the murder weapon on several occasions, and that a deceased handyman who once worked for Williams told Connell that he had seen Mizell kill Williams.

1. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence would have authorized a rational trier of fact to find Boatman guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. In his first enumeration of error, Boatman contends that the trial court erred in not allowing him to present evidence of an alleged prior act of violence by Williams against a third party. Boatman asserts that the evidence was relevant to show that this third party had a motive to kill Williams, and that the third party, and not Boatman, was the perpetrator of the crimes in question. At trial, however, Boatman did not establish the identity of this third party, and

---

[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

merely offered speculation or conjecture that the third party could have been involved in the crimes at issue. Under these circumstances, the trial court did not err in excluding the evidence in question.[3]

3. Boatman also contends that the trial court erred in admitting into evidence the statements he made to Deputy Adams when Adams first stopped him on the side of the road.

Boatman first contends that his statements were inadmissible because Deputy Adams failed to read him his *Miranda* rights before subjecting him to a custodial interrogation. The record, however, demonstrates that Deputy Adams did not subject Boatman to a custodial interrogation at that time,[4] but that, instead, Deputy Adams merely asked Boatman questions pursuant to a permissible stop under *Terry v. Ohio*.[5]

Boatman also contends that the statements were involuntary and thus inadmissible because he was not read his *Miranda* rights. "However, 'coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the [F]ourteenth [A]mendment.' "[6] Here, because the record supports the conclusion that Deputy Adams's questioning of Boatman was not coercive, this contention is without merit.

4. Boatman next contends that the letter he wrote to Detective Hernandez from prison was inadmissible. Although Boatman asserts three grounds in support of this contention, the record shows that he only preserved one of them for appeal. Because the other grounds were not asserted at trial as reasons for suppressing evidence of the letter, Boatman is procedurally barred from raising them on appeal.[7]

The one issue preserved for appeal is Boatman's contention that the letter was inadmissible under OCGA § 24-3-38 because, he contends, portions of it were missing. OCGA § 24-3-38 provides that "[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." It has been held, however, that parts of a document that are irrelevant to the case and to the parts of the document entered into evidence are not made admissible by § 24-3-38.[8]

---

[3] See *Azizi v. State*, 270 Ga. 709, 713-714 (512 SE2d 622) (1999).

[4] See *McAllister v. State*, 270 Ga. 224, 227-228 (507 SE2d 448) (1998); *Hardin v. State*, 269 Ga. 1, 3 (494 SE2d 647) (1998); *Ferrell v. State*, 261 Ga. 115, 118 (401 SE2d 741) (1991).

[5] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[6] *Wilson v. State*, 264 Ga. 287, 290 (444 SE2d 306) (1994), quoting *Colorado v. Connelly*, 479 U. S. 157, 167 (107 SC 515, 93 LE2d 473) (1986).

[7] *Huntley v. State*, 271 Ga. 227, 230 (518 SE2d 890) (1999).

[8] See *Roberts v. State*, 232 Ga. App. 745 (503 SE2d 614) (1998); *Stancil v. State*, 196 Ga.

In the present case, the record shows that the letter admitted into evidence was a complete one-page document that contained Boatman's signature at the bottom. Detective Hernandez testified, however, that there were other pages enclosed with the letter, but that they related to the alleged criminal activity of other people. Detective Hernandez added that he forwarded those pages to the Georgia Bureau of Investigation. Under these circumstances, we conclude that the trial court properly ruled that the missing pages sent to Detective Hernandez did not render the one-page letter in question inadmissible.

5. In his final enumeration of error, Boatman contends that the trial court erred in not allowing him to introduce evidence of a prior sexual relationship between Williams and Dixon. Although Boatman contends on appeal that the evidence was admissible to impeach Dixon for bias, at trial he contended that the evidence was admissible as a prior inconsistent statement. Because Boatman did not raise the issue of bias at trial, he is procedurally barred from raising it on appeal.[9]

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 6, 2000.

*Edward F. Smith,* for appellant.

*Richard E. Currie, District Attorney, James D. Lamb, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.

---

App. 530 (1) (396 SE2d 299) (1990). See also OCGA § 24-2-4 ("[w]here either party introduces part of a document or record, the opposite party may read so much of the balance as is relevant").

[9] *Huntley,* 271 Ga. at 230.