304 Ga. 755
FINAL COPY

S18A1238. HIGHTOWER v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant James Hightower was convicted of malice murder, two counts of aggravated assault, one count of aggravated battery, a firearm offense, and misdemeanor obstruction in connection with the shooting death of Anthony Bowers, the aggravated assaults of Demetrius Cosby and Myeisha Brown, and the aggravated battery of Cosby. Appellant contends that the trial court erred by making a comment that improperly bolstered an expert witness's credibility and that his trial counsel provided ineffective assistance by failing to object to the comment. Appellant also contends that his conviction for aggravated assault of Cosby should have been merged into his conviction for aggravated battery of Cosby. We affirm.[1]

---

[1] The crimes occurred on March 22, 2014. On January 19, 2016, a Fulton County grand jury indicted Appellant on the following 12 counts: malice murder (Count 1); felony murder based on possession of a firearm by a first-offender probationer (Count 2); felony murder based on attempt to purchase a controlled substance (Count 3); felony murder based on aggravated assault (Count 4); aggravated assault against Bowers (Count 5); aggravated assault against Cosby (Count 6); aggravated

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Shortly after midnight on March 22, 2014, Appellant called Bowers, who occasionally sold drugs, to arrange a meeting to buy some drugs. Cosby and his girlfriend Brown were at Bowers's house at the time and decided to ride along. The plan was for Bowers to drop them off at Cosby's house after making a quick detour to complete the drug deal. Bowers drove toward the Discount Mall in Fulton County and backed into the driveway of an abandoned house behind the shopping center. The three friends then waited in the car for Appellant to show up. Neither Brown nor Cosby knew whom Bowers was meeting; they had never met Appellant, and Bowers had not told them Appellant's name. As they waited, Brown was sitting

assault against Brown (Count 7); aggravated battery against Cosby (Count 8); attempt to purchase a controlled substance (Count 9); possession of a firearm during the commission of a felony (Count 10); possession of a firearm by a first-offender probationer (Count 11); and misdemeanor obstruction of a law enforcement officer (Count 12). Counts 2 and 11 were dead-docketed before Appellant's trial, which began on February 8, 2016, and ended three days later. The trial court directed a verdict of acquittal on Counts 3 and 9, and the jury found Appellant guilty of the remaining eight counts. The court sentenced him to serve life in prison for malice murder; 20 years each for the aggravated assaults against Cosby and Brown and the aggravated battery against Cosby; five years suspended for possession of a firearm; and 12 months for misdemeanor obstruction. Some of the sentences run concurrently, so the total sentence was life plus 45 years with five years suspended. The remaining counts were vacated or merged. Appellant filed a timely motion for new trial, which he amended with new counsel on November 16, 2017. After an evidentiary hearing, the trial court denied the motion on December 19, 2017. Appellant filed a timely notice of appeal, which he amended on March 14, 2018. The case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

in the passenger seat, and Cosby was lying down in the back seat with his head behind Brown and his feet behind Bowers.

Appellant approached the car on foot from the street, headed toward the passenger-side door, and continued around the back of the car until he reached the driver side. The front window was not working, so Bowers lowered the rear window and reached backward through the open window to hand Appellant a small bag of drugs. Appellant took the bag, reached into his pocket, and hesitated. Cosby, who was looking straight at Appellant, saw a gun in Appellant's pocket and immediately warned Bowers. Bowers started to drive away, but Appellant pulled out the gun and fired multiple shots into the car. Four bullets struck Bowers in the head, torso, and shoulder; he died instantly. Cosby was struck in the left hip and briefly blacked out. When he regained consciousness, the car was rolling out of the driveway and across the street because Bowers's foot was still on the gas pedal.

When the car crashed into the ditch across the street, the gunshots stopped "for a minute." At that point, Cosby was able to move his right leg. Cosby asked Brown if she could see if Appellant was still there. She saw Appellant walking toward the car, so Cosby told her to play dead. Appellant then fired

3

four more shots into the car. One of the bullets struck Cosby in the back, paralyzing him from the waist down. Appellant left the scene, and Brown, who had not been hit, called 911.

When the police arrived, Brown told them what had happened. She described the shooter as a black man wearing a black hoodie and jeans. An officer had seen a man matching that description walking down a nearby road just before he arrived at the crime scene. The officer got back in his car and went to look for the man. He found Appellant, who is African-American, a few streets away wearing a black hoodie and dark jeans and pulled over to stop him and ask some questions. When the officer began to frisk Appellant, he ran away. The officer chased Appellant through an apartment complex and into a wooded area, where the officer found Appellant lying on the ground and arrested him. The police later recovered Appellant's cell phone at the apartment complex and a 9mm gun in the woods near where Appellant was arrested.

After Appellant was arrested, officers took a smartphone picture of him and showed it to Brown, who was still at the crime scene. She confirmed that Appellant was wearing the same clothes as the man who shot at her, Cosby, and Bowers, although Brown was later unable to identify Appellant's photo in a six-

4

photo lineup. Cosby was hospitalized for his serious injuries; a few weeks after the shooting, a detective interviewed him for the first time. Cosby was shown a six-photo lineup and identified Appellant's photo as a picture of the shooter.

Brown and Cosby testified at trial, and Cosby again identified Appellant as the shooter. Forensic experts testified that the bullets used in the shooting were 9mm bullets fired from the gun found in the woods near Appellant and that he had gunshot residue on his hands at the time of his arrest. In addition, cell phone records showed that Appellant and Bowers exchanged text messages about buying drugs and that Appellant had called Bowers shortly before the shooting. Appellant did not testify; his theory of defense was mistaken identity.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to

determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant contends that the trial court improperly bolstered the credibility of an expert witness in violation of OCGA § 17-8-57.[2]  We disagree.

(a)    At trial, the State called Dr. Michelle Stauffenberg, the Deputy Chief Medical Examiner for Fulton County, to testify about Bowers's autopsy and the cause and manner of his death.  In response to questions about her qualifications, Dr. Stauffenberg explained among other things that she had testified as a forensic pathology expert 184 times.  The State then asked the trial court to qualify her as an expert, and Appellant had no objection.  The court,

---

[2]  OCGA § 17-8-57 says:

(a)(1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

(c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

6

referring back to an earlier instruction about expert witness testimony, told the jury: "She is an expert. Remember, I told you that experts, in weighing their testimony, you're not required to accept any testimony, expert or otherwise, but the doctor is a frequent witness in Fulton Court."

(b) Appellant contends that the trial court's statement that "the doctor is a frequent witness in Fulton Court" violated OCGA § 17-8-57, but he did not object to that comment when it was made, so we review it only for plain error. See OCGA § 17-8-57 (b). To establish plain error, Appellant must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Felton v. State, 304 Ga. 565 (819 SE2d 461) (2018). To show that the error affected his substantial rights, Appellant must demonstrate that it caused him harm, meaning "that the outcome of the trial court proceedings likely was affected." See id. at 573.

Appellant has not shown a violation of OCGA § 17-8-57, much less an obvious error. OCGA § 17-8-57 (a) prohibits a judge from "express[ing] or intimat[ing] to the jury the judge's opinion as to whether a fact at issue has or

7

has not been proved or as to the guilt of the accused." The trial court's comment indicated nothing about Appellant's guilt, and the fact that Dr. Stauffenberg "is a frequent witness in Fulton Court" was not at issue. Appellant did not (and still does not) dispute that fact or Dr. Stauffenberg's qualification as an expert in forensic pathology.

Moreover, even assuming that a jury may consider a particular witness's testimony to be more credible when the judge unnecessarily mentions that the witness frequently testifies as an expert, Appellant cannot show that he was harmed. Appellant never disputed Dr. Stauffenberg's conclusions about the cause and manner of Bowers's death, which were immaterial to Appellant's defense of mistaken identity. Indeed, the only question Appellant's counsel asked Dr. Stauffenberg on cross-examination was whether she could identify the person who shot and killed Bowers, and she acknowledged that she could not. Accordingly, even if the trial court's comment made the jury more inclined to believe Dr. Stauffenberg's testimony, that comment had no likelihood of affecting the outcome of the trial.

(c) Appellant also contends that he received ineffective assistance of counsel because his trial counsel did not object to the court's comment. To

establish ineffective assistance, Appellant must show both deficient performance of counsel and resulting prejudice. See Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). He can show neither. We have just explained that the trial court's comment did not violate OCGA § 17-8-57, and counsel does not perform deficiently by failing to make a meritless objection. See Watson v. State, 303 Ga. 758, 762-763 (814 SE2d 396) (2018). We also explained that the comment caused Appellant no harm, and "[t]he test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." Id. at 762.

3. Finally, Appellant contends that the count charging aggravated assault against Cosby should have been merged into his aggravated battery conviction because both counts were based on the same conduct — his shooting at Cosby. We disagree. The two counts did not clearly charge the same conduct, and both of the surviving victims testified that there were two separate rounds of gunshots — the first when the car was in the driveway and rolling toward the ditch, and the second after the car had crashed into the ditch. There was a distinct interval between the two rounds, and they caused distinct injuries to Cosby. One shot during the first round hit Cosby in the left hip, but he was

still able to move his right leg.  Only after Appellant walked back toward the car and fired the second round of shots was Cosby hit in the back and paralyzed. Because the two rounds were separated by a deliberate interval and resulted in different injuries, the trial court properly did not merge the aggravated assault and aggravated battery counts.  See Regent v. State, 299 Ga. 172, 174 (787 SE2d 217) (2016).  See also Oliphant v. State, 295 Ga. 597, 602 (759 SE2d 821) (2014) (finding no merger of aggravated assault counts where, after the initial shooting, one assailant returned and shot the victim in the leg).

Judgment affirmed.  All the Justices concur.

Decided December 10, 2018.

Murder. Fulton Superior Court. Before Judge Downs.

Moore Brown Law Group, Angela Z. Brown, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Teri B. Walker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, for appellee.