305 Ga. 257
FINAL COPY

S18A1440.  ROBERTS v. THE STATE.

WARREN, Justice.

Dameino Roberts was convicted of felony murder during the commission of an aggravated assault with a deadly weapon and possession of a firearm during the commission of a crime in connection with the shooting death of Jhalil King.[1]  On appeal, Roberts contends that the evidence was

---

[1] The murder was committed on September 27, 2014.  On January 13, 2015, a Richmond County grand jury indicted Roberts for malice murder, felony murder predicated on aggravated assault, possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, and two counts of criminal damage to property in the second degree.  At a trial held from March 23 to 24, 2015, the trial court directed a verdict of acquittal on both counts of criminal damage to property.  The charge of possession of a firearm by a convicted felon was not submitted to the jury.  The jury found Roberts guilty of felony murder and possession of a firearm during the commission of a crime but deadlocked on the malice murder count.  The remaining charges of malice murder and possession of a firearm by a convicted felon were nolle prossed at the State's request. The trial court sentenced Roberts to life imprisonment without parole for felony murder and a consecutive term of five years for possession of a firearm during the commission of a crime.  Roberts filed a timely motion for new trial on March 26, 2015, which was later amended by his new counsel on September 20, 2017.  A hearing was held on October 5, 2017, and the amended motion was denied on October 24, 2017.  Roberts filed a timely notice of appeal on November 14, 2017, which was amended on April 18, 2018.  The case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

insufficient to sustain his convictions, that the trial court erred by excluding certain testimony and by expressing an opinion on certain evidence in violation of OCGA § 17-8-57, and that Roberts was denied the effective assistance of counsel. We disagree and affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at Roberts's trial showed that on the night of September 26, 2014, Jhalil King was at a nightclub with Ciara Lewis, who previously had a romantic relationship with Roberts. Roberts was also there and began an argument with King. At some point, the two men left the club and walked across the street, where they began "tussling," punching, and "flipping" one another. Although King was not serious about the fight at first, he ultimately won.

At some point after the fight, Lewis went across the street from the nightclub and sat in a car with King. Both Lewis and a second eyewitness testified that later that night, while King and Lewis sat together, Roberts came around a nearby building, approached the car on King's side, "slung" his arm in the car, and said "[d]on't nobody move." Roberts then fired several gunshots, one of which fatally wounded King. Roberts did not reach into the car to take anything out of King's pockets. Instead, Roberts ran away and fired additional shots back toward the car. Footage from a surveillance camera

confirmed that a person, whom officers could not identify from the video, walked up to the side of the car and quickly ran away.

The next day, Roberts cut off his dreadlocks after he learned that the police were looking for him. Then, in October 2014, when two police officers were searching at night for a suspect in an unrelated crime, one officer shined a flashlight on Roberts, who was walking along the side of a road. He ran into some nearby woods, and the officers chased him and commanded him to stop. After chasing Roberts for about 100 yards, the officers found Roberts hiding in a large drainage pipe.

2. Roberts contends that the evidence was insufficient to support his convictions because no physical evidence placed him at the car; surveillance video that was admitted into evidence did not clearly depict the shooter; and there were a number of reasons to doubt the reliability of the two eyewitnesses who identified Roberts as the shooter.

When evaluating a challenge to the sufficiency of the evidence, we view all of the evidence presented at trial in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560)

(1979).  Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence.  See id.; *Menzies v. State*, 304 Ga. 156, 160 (816 SE2d 638) (2018).  "'As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.'"  *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) (citation omitted).  Moreover, "the State was not required to produce any physical evidence," video or otherwise, "and it was for the jury to determine the credibility of the eyewitnesses."  *Jackson v. State*, 301 Ga. 866, 867 (804 SE2d 367) (2017).  After reviewing the record of Roberts's trial, we conclude that the evidence presented against him, as summarized in Division 1, was sufficient to authorize a rational jury to find beyond a reasonable doubt that Roberts was guilty of the crimes of which he was convicted.  See *Jackson v. Virginia*, 443 U. S. at 318-319.

3.  Roberts also contends that the trial court abused its discretion when it refused to admit evidence of a dice game under OCGA § 24-4-404 (b) ("Rule 404 (b)").  Specifically, Roberts sought to admit evidence under Rule 404 (b) that — at an illicit dice game around the block from the nightclub a week before King's murder — King, Roberts, and others who frequented the area were

present, there was a heated argument, and King pulled a gun on one of the participants other than Roberts. Roberts argued that this evidence, together with the fact that thousands of dollars in cash changed hands during the dice game, was admissible as proof that a third person had as much motive to kill King as Roberts had. The trial court ruled that Rule 404 (b) was not applicable and that testimony that King pointed a gun at someone a week before his own murder "is simply not relevant." We conclude that the trial court did not abuse its discretion by excluding the testimony Roberts sought to admit.[2]

Under Rule 404 (b), "'(e)vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith,' but such evidence is admissible for other purposes, including to prove intent and motive." *Kirby v. State*, 304 Ga. 472, 479 (819 SE2d 468) (2018). See also *Fletcher v. State*, 303 Ga. 43, 46 (810 SE2d 101) (2018) ("Rule 404 (b) 'prohibits the admission of such evidence when it is offered *solely* for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime.'" (citation omitted; emphasis in

---

[2] Notably, at trial, Roberts testified that there was a verbal argument at the dice game between King and a third person, that a large sum of money was involved, and that King had about $2,000 at the game. The State did not object to Roberts's testimony. But, apparently as a result of the trial court's ruling on a motion in limine, Roberts did not testify that King drew a gun or that the argument got physical.

original)). Typically, prosecutors use Rule 404 (b) to introduce evidence of a defendant's "other acts" that the State contends are admissible for some purpose other than to prove bad character. See *Fletcher*, 303 Ga. at 46-47 (evaluating whether Rule 404 (b) evidence is "relevant to an issue other than *defendant's* character") (emphasis supplied). In this case, however, the *defendant* tried to use Rule 404 (b) to admit evidence that a *third person* may have committed the crimes. In so doing, Roberts proffered evidence of *the victim's* "other crimes, wrongs, or acts" to prove the motive of an unidentified third person.

We need not decide, however, whether Rule 404 (b) applies in these circumstances, because "[t]he paramount prerequisite to admissibility of any evidence at trial, including Rule 404 (b) evidence, is that it be relevant." *Drews v. State*, 303 Ga. 441, 448 (810 SE2d 502) (2018). Indeed, even when evidence of other acts is relevant and offered for a proper purpose under Rule 404 (b), it still may be excluded under OCGA § 24-4-403 ("Rule 403") "'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *State v. Jones*, 297 Ga. 156, 158 (773 SE2d 170) (2015) (quoting Rule 403). In

short, if the evidence of other acts fails to meet the admissibility requirements contained in OCGA § 24-4-401 ("Rule 401") through Rule 403, then such evidence is inadmissible as a threshold matter.

That is what happened here: Roberts attempted to offer evidence that King pulled a gun on a third person at the dice game, but failed to show how that evidence met basic admissibility requirements. This Court has followed the general rule that, before testimony can be introduced that another person committed the charged crime, the proffered evidence must raise a reasonable inference of the defendant's innocence and, in the absence of a showing that the other person recently committed a crime of the same or similar nature, "'must directly connect the other person with the corpus delicti.'" *Moss v. State*, 298 Ga. 613, 616 (783 SE2d 652) (2016) (decided under the new Evidence Code, but quoting an old Evidence Code case, *Klinect v. State*, 269 Ga. 570, 573 (501 SE2d 810) (1998)). In *Moss v. State*, for example, this Court rejected under Rule 403 the admissibility of evidence of the commission of the crime by a third party that was "'based purely on rumor, speculation, and conjecture.'" 298 Ga. at 616 (citation omitted). See also *De La Cruz v. State*, 303 Ga. 24, 28 (810 SE2d 84) (2018) ("[E]vidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of

the crime by another is not admissible." (citation and punctuation omitted)). We have also held that it was not error to exclude a prior act of violence by the victim against a third party that was offered to prove that the third party had a motive to kill the victim, where the defendant "did not establish identity of this third party, and merely offered speculation or conjecture that the third party could have been involved in the crimes at issue." *Boatman v. State*, 272 Ga. 139, 140-141 (527 SE2d 560) (2000). See also, e.g., *Wade v. Mantello*, 333 F3d 51, 60 (2d Cir. 2003) ("That a third party may have borne animus towards the victim, standing alone, does little to establish that the third party committed the crime. . . . [The proffered] testimony would at most have suggested that a third party had motive to murder [the victim], but neither the testimony nor the defense proffer tended to show that this third party had the opportunity to commit the murder. And even if opportunity could be inferred, nothing linked this third party to [the] murder.").

Here, Roberts did not show how the evidence he sought to admit was relevant under Rule 401 by offering, for example, that the third person who supposedly had a motive to kill King was also present at or near the nightclub on the night of the murder. See *De La Cruz*, 303 Ga. at 27-28 (trial court did not err in excluding evidence that a third person assaulted a different victim

sometime in the past at the same location where the murder occurred because that evidence did not directly connect the third person to the corpus delicti and did not raise a reasonable inference of the defendant's innocence because there was no evidence that the third person was at that same location on the night of the murder).  Cf. *Gilreath v. State*, 298 Ga. 670, 673-674 (784 SE2d 388) (2016) (trial court abused its discretion by prohibiting the defendant from questioning a witness about a prior allegation of child abuse by a third person where that third person was the only adult other than the defendant in the home of the child victim on the day the child's death occurred, and the proffered evidence would have raised a reasonable inference of the defendant's innocence).  Indeed, Roberts named that third person for the first time at the hearing on his motion for new trial, at which time he provided only a nickname. Roberts has offered nothing more than speculation and conjecture that a third person could have been involved in King's murder, and — regardless of the applicability of Rule 404 (b) — the trial court did not abuse its discretion in excluding evidence that King pulled a gun on a third person at the dice game. See *Moss*, 298 Ga. at 616; *Boatman*, 272 Ga. at 140-141.

4.  Roberts next contends that the trial judge committed plain error when he violated OCGA § 17-8-57 by commenting on the evidence of a surveillance

video that was played for the jury at trial.  See OCGA § 17-8-57 (a) (1) ("It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.").  We disagree.

The surveillance video played at trial was about one minute long and showed that a person walked up to — and then quickly ran away from — King's side of the car.  After the video was played the first time, the trial judge ordered that it be played again.  Before it was played a second time, however, the judge instructed the jury that "this is not one of these items that you're going to be allowed to have a computer and the tape and look back and forth and back and forth at a hundred times, so understand that it's going to be important that you get your sense of whatever you are to glean from this video tape here in the courtroom."  The video was then played a second and a third time.  Afterwards, a second clip, which "zoomed in on the picture," was also played two times.[3]  The trial judge immediately instructed the jury that "I do not have that video played for you to emphasize that over any other evidence,

_____

[3] It is not entirely clear how many times the video was played; at the hearing on his motion for new trial, Roberts argued that it was played four times, whereas the trial transcript indicates that it was played at least five times.  However, it is not necessary to resolve that question because there is no dispute that the video was played several times and the exact number is not material to our analysis here.

I just knew that . . . it was a bit grainy, it was hard to make out some images and I wanted to give you an opportunity to first get a sense of what you're looking at and then look at whatever level of detail you thought relevant, if at all."

Roberts argues that the judge's first instruction indicated that the jury should pay special attention to the video as compared to other evidence. This emphasis on the importance of the video, Roberts contends, amounted to an opinion on the weight of the evidence and hinted that, contrary to the defense of mistaken identity that Roberts offered at trial, the video was valuable because it in fact showed Roberts committing the crime.

Roberts acknowledges that his counsel did not object to the trial judge's comments and concedes that his claim may be reviewed only for plain error.[4] To establish plain error, Roberts must identify a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, likely affected the outcome of the trial court proceedings, and seriously affected the

---

[4] OCGA § 17-8-57 (b) — which became effective on July 1, 2015, shortly after the trial in this case — applies retroactively to preclude appellate review of a claim that the trial judge commented on the evidence unless the alleged violation of the statute constitutes plain error that affects the substantive rights of the parties. *Willis v. State*, 304 Ga. 122, 126, 128-129 (816 SE2d 656) (2018). See also *Jones v. State*, 304 Ga. 594, 601 (820 SE2d 696) (2018).

fairness, integrity, or public reputation of judicial proceedings. *Hightower v. State*, 304 Ga. 755, 759 (822 SE2d 273) (2018).

Pretermitting whether the trial judge erred in its commentary about the surveillance video, Roberts has not established the second prong of the plain error test: that any error was "clear and obvious beyond reasonable dispute." *Hightower*, 304 Ga. at 759. Indeed, Roberts's argument "ignores the context in which the comment was made." *Jones*, 304 Ga. at 602. Here, although the trial judge did encourage the jury to pay attention to the surveillance video, his comments did not pertain to the substance of the video; they pertained to the process the judge intended to use with respect to that piece of evidence. To that end, the judge informed the jurors that they would not be given a computer during deliberations — which meant that they would not be able to review the surveillance video on their own — and concluded by explaining that the jury's review of the video must take place "here in the courtroom." Given the context in which the comments were made, it is hardly clear and obvious that the jurors would have viewed the judge's instructions as commenting on the weight of the evidence as opposed to providing a straightforward explanation that they would not have additional opportunities to review the video during deliberations. And that type of explanation would amount to "a permissible

clarification of procedure" that does "'not address the credibility of witnesses or any fact at issue in the trial.'" *Brown v. State*, 302 Ga. 454, 463 (807 SE2d 369) (2017) (quoting *Linson v. State*, 287 Ga. 881, 884 (700 SE2d 394) (2010)) (identifying no violation of OCGA § 17-8-57 where the trial judge explained to the jury that a video had been redacted so as to include only the relevant portions). Understanding the nature of the judge's comments as a "clarification of procedure" is also consistent with his later instruction to the jury that the short video was not replayed to emphasize it over any other evidence, but to give jurors an opportunity to examine any details that they "thought relevant, if at all."

Moreover, Roberts cannot meet the third prong of the plain error test because he has not shown that he was harmed. Even if the trial judge's comments had constituted a clear and obvious violation of OCGA § 17-8-57, they had "no likelihood of affecting the outcome of the trial," see *Hightower*, 304 Ga. at 759 — both because of the strong evidence against Roberts at trial, including eyewitness identifications of him as the shooter, and because of the judge's prompt instruction denying any purpose to emphasize the surveillance video over other pieces of evidence and reaffirming the jury's role in evaluating the video's relevance, if any. Moreover, the trial judge's

instructions about the video could reasonably be viewed as potentially *helping* Roberts's mistaken-identity defense, since the judge pointed out that he was replaying the video because it "was a bit grainy" and that "it was hard to make out some images." Because Roberts has failed to show a violation of OCGA § 17-8-57 that amounted to plain error, his claim fails.

5. Roberts further contends that his trial counsel rendered ineffective assistance in several ways. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no

reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, 'decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.'" Id. (citation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Roberts claims that his trial counsel provided constitutionally ineffective assistance by failing to object to the trial judge's allegedly improper comment about the surveillance video. However, Roberts "did not raise this ineffective assistance claim when [he] was represented by new counsel in [his] motion for new trial and the trial court did not rule on it, so the claim was not preserved for review on appeal." *Gomez v. State*, 301 Ga. 445, 460 (801 SE2d

847) (2017). Moreover, even if this claim had been preserved for appellate review, we have already explained that the judge's comment caused Roberts "no harm, and '(t)he test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review.'" *Hightower*, 304 Ga. at 759-760 (citation omitted).

(b) Roberts also claims that his trial counsel rendered ineffective assistance during counsel's cross-examination of Lewis by failing to elicit testimony that King had $2,000 before (but not after) the shooting, and that counsel was ineffective for failing to call any other witness who could provide testimony to that effect. Such testimony, Roberts asserts, would have provided a potential alternative motive for King's death: robbery. But counsel's decisions about "which defense witnesses to call and the extent of cross-examination are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." *Washington v. State*, 294 Ga. 560, 566 (755 SE2d 160) (2014).

Roberts's counsel did cross-examine Lewis with some success, but did not cross-examine her about King's cash or call her as a witness in Roberts's case-in-chief; doing so would not obviously have been helpful because Lewis

had already testified that she did not see anyone take money out of King's pockets on the night of the murder, and it could have been harmful because further examination of Lewis could have resulted in reinforcement of her version of the shooting and her identification of Roberts as the shooter. Moreover, even though Roberts could not provide his attorney with the names, addresses, or other contact information of any potential witnesses who could testify that King had $2,000 in cash a week before his murder, counsel nevertheless interviewed several possible witnesses but did not find anyone he thought would be helpful. We cannot say that trial counsel's decisions about how to cross-examine Lewis and whether to call additional witnesses were so unreasonable that only an incompetent attorney would have made them. And because trial counsel was not deficient in his strategic decisions, Roberts's claim of ineffective assistance fails. See *Lawrence*, 286 Ga. at 533-534.

(c) Roberts also asserts that his trial counsel was ineffective because he was inadequately prepared for trial. In particular, he argues that trial counsel filed a motion for continuance shortly after entering a notice of appearance, and then approximately one month later (and a few days before trial) stated as a basis for the requested continuance: "I have not had time to actually prepare a defense in this case."

As an initial matter, the record shows that counsel primarily based his motion for continuance on the absence of contact information for one of the State's witnesses. But when the State expressed its own inability to contact that particular witness, the trial court assured defense counsel that if the witness testified at trial, defense counsel would first have an opportunity to interview the witness. Roberts nonetheless argues that the trial court resolved only the preparation issues related to that particular witness, and that it did not address the remainder of Roberts's request for a continuance. The record, however, shows that Roberts's trial counsel waived the remainder of his motion for continuance: he acknowledged that he had no other basis for a continuance, represented that he would be ready for trial, and stated "I will waive that motion, yes, Your Honor." Testimony at the hearing on the motion for new trial also rebutted Roberts's claim: counsel testified that although "more time . . . could have been useful" and "is always helpful," he did not think he had a strong basis for a continuance for Roberts's trial.[5]

---

[5] As part of this enumeration, Roberts further complains that his trial counsel was inadequately prepared because the trial court's ruling on a motion in limine just four days before trial excluded evidence that was important to Roberts's theory of the case. But because Roberts "fails to articulate with any specificity how [his counsel] could have better represented him had [counsel] been given more time to prepare," Roberts "is unable to show that [counsel's] representation was deficient in any way." *Rice v. State*, 301 Ga. 746, 748 (804 SE2d 5) (2017).

Even assuming that counsel's performance was deficient in some way, Roberts has failed to show that the deficiency was prejudicial. He presents no evidence "as to what further investigation or preparation might have produced that would have made a difference in the outcome of his trial." *Lane v. State*, 299 Ga. 791, 795 (792 SE2d 378) (2016). And to the extent that Roberts suggests that his trial counsel should have called additional witnesses, he has failed to make any proffer of testimony or a legally acceptable substitute for such testimony. See *Brown v. State*, 301 Ga. 728, 735-736 (804 SE2d 16) (2017); *Cushenberry v. State*, 300 Ga. 190, 198 (794 SE2d 165) (2016); *Green v. State*, 291 Ga. 287, 298 (728 SE2d 668) (2012). Because Roberts has not shown that any deficiencies in trial counsel's performance were prejudicial, his claims of ineffective assistance fail.

6. Roberts contends that the trial court interfered with his constitutional right to effective assistance of counsel by persuading defense counsel to waive his motion for continuance. According to Roberts, the trial court exerted pressure on counsel by making the statement "saying that you can't get a case ready to try in a month" is "a little disingenuous," and then ignoring counsel's stated lack of preparedness for trial and asking whether counsel was "going to waive [his] motion for continuance provided" that he would be given the

opportunity to interview the State witness who had not yet been located. The trial court's involvement, Roberts insists, did not come within the court's normal discretion in conducting a trial, but amounted to an actual or constructive denial of counsel — leading to a presumption of prejudice — by preventing "meaningful adversarial testing" of the prosecution's case. *United States v. Cronic*, 466 U. S. 648, 659 (104 SCt 2039, 80 LE2d 657) (1984).

The scope of the *Cronic* presumed prejudice exception is quite limited, as the Supreme Court of the United States has emphasized: "'When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing."'" *Charleston v. State*, 292 Ga. 678, 682 (743 SE2d 1) (2013) (quoting *Bell v. Cone*, 535 U. S. 685, 696-697 (122 SCt 1843, 152 LE2d 914) (2002)) (emphasis in original). See also *Turpin v. Curtis*, 278 Ga. 698, 699 (606 SE2d 244) (2004). That standard has not been met here. Indeed,

> the time available to counsel to prepare is simply another factor to be considered, under the totality of the circumstances, in determining whether the right to effective assistance of counsel was denied. The defendant must show how that lack of time resulted in deficient performance and how that deficient

performance had a probable prejudicial impact, using the *Strickland* standard for both of those prongs of the ineffective-assistance showing.

3 Wayne R. LaFave et al., Criminal Procedure § 11.8 (c) (4th ed.) (Nov. 2018 Update). In light of our resolution of Roberts's ineffective assistance claim regarding the adequacy of his trial counsel's preparation, see Division 5 (c) supra, and given that no extraordinary circumstances merit application of *Cronic* to the facts of this case, Roberts's claim fails.

We therefore affirm Roberts's convictions and the trial court's denial of his motion for new trial.

*Judgment affirmed. All the Justices concur.*

Decided February 18, 2019.

Murder. Richmond Superior Court. Before Judge Padgett.

Caitlin E. Angelette, Katherine M. Mason, for appellant.

Natalie S. Paine, District Attorney, Joshua B. Smith, Mary E. Bitting, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.