307 Ga. 96
FINAL COPY

S19A0721. POWELL v. THE STATE.

ELLINGTON, Justice.

Appellant Kenneth N. Powell was tried before a Dougherty County jury and convicted of malice murder in the shooting death of Lionel Turner.[1] Appellant contends that the evidence was insufficient to sustain his conviction, that the trial court erred in

---

[1] Turner was killed on June 19, 1993. On August 26, 1993, Appellant and Donny C. Mimbs were jointly indicted by a Dougherty County grand jury for malice murder (Count 1), felony murder predicated on aggravated assault by shooting Turner with a gun (Count 2), and aggravated assault by beating Turner with a chair (Count 3). Appellant was tried separately in a November 8 to 9, 1993, jury trial. The jury found Appellant guilty of malice murder only. On November 9, 1993, the trial court sentenced Appellant to serve life in prison. A motion for new trial was filed by trial counsel on November 22, 1993. Appellant, through new counsel, filed an extraordinary motion for new trial on July 8, 1997. Appellant represented therein that, although the motion for new trial was heard December 29, 1993, no order had been entered on the motion because no transcript of the motion for new trial proceeding existed. Appellant represented that the court reporter had "left the area" before transcribing the hearing. On September 19, 1997, the trial court granted new counsel's motion to withdraw. More than 20 years later, on April 3, 2018, Appellant's current counsel was appointed by the trial court. Appellant filed an amended motion for new trial on September 11, 2018. Following a hearing, the trial court entered its order denying the motion for new trial on November 15, 2018. Appellant's timely appeal was docketed in this Court to the April 2019 term and submitted for decision on the briefs.

instructing the jury, and that his trial counsel provided ineffective assistance. For the reasons that follow, we find no merit in these claims of error, and we affirm.

Viewed in a light most favorable to the verdict, the evidence at trial showed the following. In mid-June 1993, Appellant's cousin, Tony Powell ("Powell"), was allegedly assaulted by Turner and Stephon Davis. On June 19, Appellant and Donny Mimbs walked around their neighborhood searching for Turner and Davis. A witness testified that Appellant had "a problem" with Turner. Appellant was carrying a gun in his hand and looked upset.

During their search, Appellant and Mimbs crossed paths with Powell and two other men, who joined the group. Powell asked Appellant to put the gun away, but Appellant refused. Appellant told Powell that he was looking for Davis because Davis and Turner had "jumped on" Powell.

When the group reached Davis's girlfriend's house, Appellant told a resident to tell Davis that Appellant was "going to get him" because "it wasn't right how [Davis] did that night when they was

fighting." After learning that Davis was not there, the group began walking toward Powell's aunt's house. On the way, Appellant saw Turner outside his grandmother's house, standing on the porch. Appellant began walking toward Turner, and Mimbs and Powell followed.

Turner's grandmother, who was on the porch with Turner, testified that she saw three men approaching "like they were mad." Mimbs "reached and got the gun" from Appellant and shot Turner. Turner's grandmother ran into her house after the first shot. She testified that, before she fled inside, she saw that Appellant and Powell remained on the porch steps. Once inside, she heard three more shots.

According to Powell, Mimbs went up onto the porch first. Mimbs told Appellant "you ought to kill the S. O. B.," and then "snatch[ed]" the gun from Appellant. Mimbs shot Turner once and then, after a struggle between the two, shot him a second time, after which Turner collapsed. Mimbs fired a third shot at Turner's hip area. Appellant then took the gun back from Mimbs and shot Turner

in the knee, after which Mimbs grabbed a chair and began hitting Turner in the back of the head. After the shooting, according to Powell, he and Appellant "ran off separately."

Another cousin of Powell's, Larry Brown, was approximately four houses away from the scene at the time of the shooting. He testified that he saw Mimbs grab the gun from Appellant and fire four shots. Brown saw Appellant "throw a chair." Another witness testified that, after hearing about the shooting, she accused Appellant of shooting "that boy," and Appellant responded, "yeah," adding that anyone who assaulted his cousin "needs to be dead."

The testimony of the pathologist who performed Turner's autopsy showed that Turner suffered gunshot wounds to the chest, abdomen, right buttocks, and right knee. According to the pathologist, Turner bled to death. The pathologist agreed on cross-examination that the wound to Turner's chest, which passed through both lungs and the aorta, would have caused death within a minute. He also testified that, in reference to the gunshot to the knee, "[i]f it contributed at all [to Turner's death], it was a minor

4

factor."

1. Appellant contends that the evidence was legally insufficient to support his malice murder conviction because Mimbs is solely responsible for Turner's death. Appellant argues that, while evidence showed that he shot Turner in the knee, the knee injury was minor and Turner was already dead because his aorta had been severed when Mimbs shot him in the chest. Further, Appellant argues, he did not aid or abet Mimbs, who grabbed the gun out of Appellant's hands and then fatally shot Turner.

When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (Emphasis omitted.). Here, the evidence is sufficient to show that Appellant was a party to the crime of malice murder. See OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either

5

express or implied, causes the death of another human being.");
OCGA § 16-2-20 (a) ("Every person concerned in the commission of
a crime is a party thereto and may be charged with and convicted of
commission of the crime.").

In relevant part, a person is concerned in the commission of a
crime only if he "(3) Intentionally aids or abets in the commission of
the crime; or (4) Intentionally advises, encourages, hires, counsels,
or procures another to commit the crime." OCGA § 16-2-20 (b) (3),
(4). Further, "a conviction as a party to a crime requires proof that
the defendant shared a common criminal intent with the principal
perpetrator of the crime." *Downey v. State*, 298 Ga. 568, 569 (1) (783
SE2d 622) (2016) (citation and punctuation omitted). "While mere
presence at the scene of a crime is not sufficient evidence to convict
one of being a party to a crime, criminal intent may be inferred from
presence, companionship, and conduct before, during and after the
offense." *Navarrete v. State*, 283 Ga. 156, 158 (1) (656 SE2d 814)
(2008) (citation and punctuation omitted).

The evidence showed that Appellant and Mimbs canvassed the

neighborhood together in search of Turner and Davis. Appellant was openly carrying a gun, refused to put it away, and led the group to the porch where Turner was shot to death. Even if Mimbs took the gun and started shooting first, Appellant took the gun back and shot Turner as well. Appellant, who believed that Turner had previously assaulted Powell, thereafter acknowledged that he had shot Turner and told the witness that anyone who had assaulted his cousin needed "to be dead." It may be reasonably inferred from the evidence that, even though Mimbs fired the fatal shots, the shooting was a common enterprise between Appellant and Mimbs in which Appellant aided Mimbs through his active participation and in which they shared in the criminal intent to kill Turner. It follows that a rational trier of fact could have found beyond a reasonable doubt that Appellant was a party to the crime of malice murder. See *Powell v. State*, 291 Ga. 743, 745 (1) (733 SE2d 294) (2012) (evidence was sufficient to support appellant's murder conviction as a party to the crime even assuming that appellant's companion, and not the appellant, fired the fatal shot, as they were engaged in a common

7

enterprise at the time of the shooting and it could be reasonably inferred from the evidence that they shared a criminal intent); *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2010) (that appellant did not actually fire the gun that fatally wounded the victim was immaterial to his conviction as a party to the crime of malice murder).

2. Appellant contends that the trial court erred in failing to instruct the jury on (a) causation in a homicide case, (b) the respective responsibilities of the trial court and the jury, (c) circumstantial evidence, and (d) venue. Although Appellant reserved the right to object to the jury instructions as was customary at the time of his 1993 trial,[2] he was not relieved from the necessity of requesting instructions other than "in those circumstances where

---

[2] See *White v. State*, 243 Ga. 250, 251 (253 SE2d 694) (1979) (Holding that "[w]here the trial court inquires whether there was objection [to the jury charges] and the defendant's counsel states that he reserves the right to object in his motion for new trial or appeal, there is no waiver."). Because Appellant's trial was conducted before July 1, 2007, the trial court's charge is not subject to OCGA § 17-8-58, which "changed the prior practice whereby counsel could generally reserve objections to the charge pending a motion for new trial or appeal." *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011) (citation and punctuation omitted).

the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." *Johnson v. State*, 253 Ga. 37, 38 (315 SE2d 871) (1984) (citation and punctuation omitted). See also OCGA § 5-5-24 (b) ("In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the jury on the law as set forth therein. . . ."); *Barrett v. State*, 292 Ga. 160, 165-166 (2) (733 SE2d 304) (2012) (while appellant reserved objections to the charge during his trial in 2005, he was not relieved from the necessity of requesting instructions; the trial court did not err in omitting the unrequested charge as the omission was not clearly harmful as a matter of law). The only charge requested in writing by Appellant concerned mere presence at the scene of a crime.

(a) Appellant contends that the trial court erred in failing to instruct the jury sua sponte on causation in a homicide case. That standard, as Appellant correctly points out, is proximate cause. See

*State v. Jackson*, 287 Ga. 646, 648-649 (2) (697 SE2d 757) (2010).

The indictment, which the trial court read to the jurors and which was provided to them during their deliberations, charged Appellant with the offense of malice murder in that he "did unlawfully and with malice aforethought cause the death of . . . Turner . . . by shooting [him]." The trial court instructed the jury that "a person commits murder when that person unlawfully and with malice aforethought . . . causes the death of another human being." The court also thoroughly instructed the jury on the law of parties to a crime. Considering the charge as a whole, the jury was informed that, in order to convict, it was required to determine that Appellant either caused or was a party in causing Turner's death. As the charge did not fail to provide the jury with the proper guidelines for determining guilt or innocence, the trial court did not err in failing to give a separate charge on causation in a homicide case. See *Whiting v. State*, 296 Ga. 429, 430-431 (2) (768 SE2d 448) (2015) (in the defendant's felony murder trial, the charge as given was sufficient to inform the jury that it was required to find that the

defendant caused or was a party in causing the victim's death, and the trial court did not err in failing to instruct the jury sua sponte on the issue of proximate causation); *Flournoy v. State*, 294 Ga. 741, 746 (3) (755 SE2d 777) (2014) (trial court did not err in failing to instruct the jury on proximate cause because its "instruction on felony murder and party to a crime, which referenced the allegations of the indictment, was sufficient to inform the jury that, in order to convict, it had to determine [the defendant] caused or was a party in the causing of [the victim's] death").

(b) Appellant claims that the trial court erred in failing to fully instruct the jury on the respective responsibilities of the trial court and the jury. During its final instruction, the trial court charged, "[n]ow, you, as the jury in this case, will determine both the law and the facts." Appellant argues that the instruction given was misleading and that the trial court was obligated to fully instruct the jury that it was bound by the court's instructions and was required to apply the law given by the court.

The language charged by the trial court "was formerly in the

11

Suggested Pattern Jury Instructions [and] has since been replaced."

*Hampton v. State*, 272 Ga. 284, 287 (7) (527 SE2d 872) (2000). See

*Dasher v. State*, 229 Ga. App. 41, 44 (3) (494 SE2d 192) (1997)

(Previously, "the Pattern Jury Instructions included a charge: 'You

will determine both the law and the facts.' This instruction was

replaced by a more accurate and complete instruction in January

1996[.]"). The instruction given was derived from the Georgia

Constitution of 1983, Art. I, Sec. I, Par. XI (a), which provides that

"the jury shall be the judges of the law and the facts." See *Hampton*,

272 Ga. at 287 (7).[3]

The transcript also shows that, before closing argument, the

trial court instructed the jurors to keep their "minds clear" until they

heard counsels' arguments and "the charge of the Court, so you will

know what the appropriate law is to apply to the facts that you find

---

[3] See also *State v. Freeman*, 264 Ga. 276, 278 (444 SE2d 80) (1994) (acknowledging the "firmly established" interpretation of Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a) that: "It is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence. While the impaneled jurors are made absolutely and exclusively judges of the facts in the case, they are, in this sense only, judges of the law." (citation omitted)).

from the testimony that was presented here." During the final instructions, the trial court also instructed the jury that the "court cannot interpret the facts for you," and that "[y]ou must make your decision upon the facts as you find them," but that the jury could, during the course of deliberations, submit questions to the court which "must concern the law that the Court has charged you on." The trial court's charge, viewed as a whole, instructed the jury to apply the law as given by the court to the facts of the case, and did not fail to provide the jury with the proper guidelines for determining guilt or innocence. See *Wright v. State*, 274 Ga. 730, 732 (2) (c) (559 SE2d 437) (2002) (It was not error to charge the jury: "you will both determine the law and the facts." (punctuation omitted)); *Hampton*, 272 Ga. at 287 (7) (It was not error to charge the jury: "You will determine both the law and the facts in this case." (punctuation omitted)).

(c) Appellant contends that the trial court erred in failing to charge the jury on circumstantial evidence. Where, as here, the State presents both direct and circumstantial evidence, a trial court

13

must instruct the jury on circumstantial evidence only if requested by the defendant. See *Sumlin v. State*, 283 Ga. 264, 267 (3) (658 SE2d 596) (2008); *Yarn v. State*, 265 Ga. 787, 787 (1) (462 SE2d 359) (1995). Appellant does not show that he requested a charge on circumstantial evidence. Accordingly, the trial court's failure to give the charge was not erroneous as a matter of law, and given the amount of direct evidence, the failure to charge on circumstantial evidence was not clearly harmful either.

(d) Appellant further contends that the trial court erred in failing to charge the jury on venue. We have urged, and continue to urge, trial courts to give appropriate charges on venue. See, e.g., *Thompson v. Brown*, 288 Ga. 855, 858 (708 SE2d 270) (2011); *Lynn v. State*, 275 Ga. 288, 290 (3) (565 SE2d 800) (2002). However, "where venue is proven and the trial court charges the jury generally on the law of reasonable doubt, it is not necessary for the court to charge the jury that proof of venue is a material allegation of the indictment." *Shahid v. State*, 276 Ga. 543, 543-544 (2) (579 SE2d 724) (2003) (citation and punctuation omitted). Accord *Harwell v.*

*State*, 230 Ga. 480 (1) (197 SE2d 708) (1973). See also *Lanham v. State*, 291 Ga. 625, 627 (3) (732 SE2d 72) (2012) ("[W]e have declined to reverse a conviction and require a new trial based on the trial court's failure to sua sponte instruct the jury on venue."). Here, the State presented unrebutted evidence that Turner was shot and killed in Dougherty County, where the case was tried. See OCGA § 17-2-2 (c) ("Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted. . . ."). The trial court correctly charged the jury on reasonable doubt. In instructing the jury on the offense of murder, the trial court specified, among other things, that

> [i]f after considering the testimony and evidence presented to you, together with the charge of the Court, you should find and believe beyond a reasonable doubt that the defendant did, in *Dougherty County, Georgia*, on or about the date alleged in the indictment, commit the offense of murder as alleged in Count 1, then you'd be authorized to find the defendant guilty.

(Emphasis supplied.) Accordingly, in the absence of a request, the trial court's failure to charge the jury on venue was not reversible error. See *Lanham*, 291 Ga. at 627 (3); *Shahid*, 276 Ga. at 543-544

15

(2).

3. Appellant contends that trial counsel provided ineffective assistance in failing to request jury instructions on (i) causation in a homicide case, (ii) the respective responsibilities of the trial court and jury, (iii) circumstantial evidence, (iv) venue, (v) Appellant's failure to testify, and (vi) the lesser offense of voluntary manslaughter. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984).

To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (citation omitted). See also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the strong presumption

that trial counsel's performance was adequate. See *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). In assessing prejudice, "[w]hen the asserted error of failure to charge is reached indirectly through a claim of ineffective assistance of counsel the test is whether, had the charge been requested, authorized, and given, there is a reasonable probability it would have changed the outcome of the trial." *Springs v. Seese*, 274 Ga. 659, 661 (3) (558 SE2d 710) (2002) (citations and emphasis omitted). See also *Lee v. State*, 281 Ga. 776, 777 (3) (642 SE2d 835) (2007) (same).

(a) Appellant cannot show that his counsel was ineffective in failing to request jury instructions addressing (i) causation in a homicide case, (ii) the respective responsibilities of the trial court and jury, (iii) circumstantial evidence, and (iv) venue. Assuming that trial counsel was deficient in failing to request these charges, the omission of these charges did not fail to provide the jury with the proper guidelines for determining guilt or innocence. See Division 2, supra. Considering the jury instructions as a whole as well as the relevant evidence, Appellant cannot show that, had the charges been

17

requested, authorized, and given, there is a reasonable probability they would have changed the outcome of the trial. See *Butts v. State*, 273 Ga. 760, 768 (18) (546 SE2d 472) (2001) (where trial court's instructions were adequate as given, appellant could not show prejudice in trial counsel's failure to request charge).

(b) Appellant, who did not testify at trial, claims that his trial counsel was ineffective in failing to request an instruction informing the jury that he was not required to take the stand and testify in his defense, and that no adverse inference shall be drawn by the jury from his failure to testify. The evidence that Appellant was a party to Turner's murder was strong, and the trial court instructed the jury on the State's burden of proof and the presumption of innocence. Nor does Appellant point to any improper reference by the State to his failure to testify. Pretermitting whether trial counsel's performance was deficient, we conclude that Appellant cannot establish a reasonable likelihood that his counsel's failure to request the charge changed the outcome of the trial. See *Mitchell v. State*, 282 Ga. 416, 421 (6) (e) (651 SE2d 49) (2007) (in the absence of a

curative need for the charge, and in view of the overwhelming evidence of appellant's guilt, appellant was not prejudiced by his counsel's failure to request a charge on a defendant's right not to testify).

(c) Appellant also contends that his trial counsel was deficient in failing to request a jury charge on the lesser offense of voluntary manslaughter. See OCGA § 16-5-2 (a).[4] The evidence showed that Appellant was angry at Turner because of a fight involving Turner, Davis, and Powell that occurred several days before the shooting. However, that prior altercation would not support a charge on voluntary manslaughter. See *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015) (Where prior altercation and fighting

---

[4] OCGA § 16-5-2 (a) provides:
   A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

involving defendant's relatives occurred some 30 to 40 minutes before defendant arrived at the scene of the shooting, the evidence did not support a charge on voluntary manslaughter.). There is no evidence that Appellant, upon his arrival at Turner's grandmother's house, was provoked by Turner. Appellant argues that he was nevertheless overwhelmed by the circumstances in that Mimbs snatched his gun, and he saw Mimbs shoot Turner and hit Turner with a chair. However, those are not circumstances that "would have provoked a *reasonable* person to kill" Turner. *Rigsby v. State*, 306 Ga. 38, 43 (3) (829 SE2d 93) (2019) (citations omitted; emphasis in original). See also *Bailey v. State*, 301 Ga. 476, 480 (IV) (801 SE2d 813) (2017) (we "evaluate the alleged provocation evidence with respect to its impact on a reasonable person, putting aside any peculiar response [the defendant] may have had"). Trial counsel was not deficient for failing to request a charge on voluntary manslaughter because there was no evidence to support the charge. See *Bryson v. Jackson*, 299 Ga. 751, 755 (2) (d) (791 SE2d 43) (2016) (trial counsel was not ineffective in failing to request a charge on

20

voluntary manslaughter where the charge was not supported by the evidence).

(d) The effect of prejudice arising from trial counsel's deficient performance is viewed cumulatively. *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." (citation and punctuation omitted)). For the reasons stated in Division 3 (c), trial counsel was not deficient in failing to request a charge on voluntary manslaughter. Assuming that trial counsel was deficient in failing to request the jury charges addressed in Divisions 3 (a) and (b), the cumulative prejudice from the assumed deficiencies is insufficient to show a reasonable probability that the result of the trial would have been different in the absence of the alleged deficiencies.

*Judgment affirmed. All the Justices concur.*

PETERSON, Justice, concurring.

The Georgia Constitution has long provided that "the jury shall be the judges of the law and the facts." Ga. Const. of 1983, Art. I,

Sec. I, Par. XI (a).[5] Division 2 (b) of today's opinion essentially concludes that it was harmless to instruct a jury in this constitutional language because the rest of the jury instructions made it sufficiently clear that the Constitution's language does not mean what it appears to say. This seems strange.

But the Court's opinion is a faithful application of case law that has been consistent since at least 1940. See, e.g., *Harris v. State*, 190 Ga. 258, 260-264 (9 SE2d 183) (1940) (overruling inconsistent opinions that interpreted the provision more broadly). And no party has challenged that precedent as failing to apply the original public meaning of the Georgia Constitution, much less explained whether the principles that guide our constitutional interpretation would even allow such a challenge at this late date. Compare *Elliott v.*

---

[5] A version of this provision was in our first Constitution, a statute enacted in 1816, and then every Constitution since 1868. See Ga. Const. of 1777, Art. XLI ("The jury shall be judges of law, as well as of fact . . . but if all, or any of the jury, have any doubts concerning points of law, they shall apply to the bench, who shall each of them in rotation give their opinion."); Acts of the General Assembly of the State of Georgia, passed in November and December, 1816, Vol. 1, 195; Ga. L. 1833, p. 207 § 16; Ga. Const. of 1868, Art. I, Sec. 19 (applying only to libel); Ga. Const. of 1877, Art. I, Sec. II, Par. I (applying to all criminal cases); Ga. Const. of 1945, Art. I, Sec. II, Par. I (same); Ga. Const. of 1976, Art. I, Sec. I, Par. VIII (same).

*State*, 305 Ga. 179, 182-184 (II) (A) (824 SE2d 265) (2019) (constitutional provision carried forward from previous Constitution presumed to carry with it the provision's original public meaning) with id. at 184-187 (II) (B) (constitutional provision carried forward from previous Constitution presumed to carry with it our consistent and definitive interpretation). Accordingly, I join the Court's opinion in full.

DECIDED OCTOBER 21, 2019.
Murder. Dougherty Superior Court. Before Judge Lockette.
*Troy E. Golden*, for appellant.
*Gregory W. Edwards, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney*

*General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General,* for appellee.