**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A1832. ELROD v. THE STATE.

BROWN, Judge.

Leon Elrod appeals from his conviction of violating the Georgia Controlled Substances Act by selling cocaine. In this appeal, Elrod asserts the following four enumerations of error: (1) insufficient evidence supports his conviction; (2) the trial court expressed an improper opinion on the evidence; (3) the trial court failed to instruct the jury about venue and the nature and types of evidence; and (4) the trial court improperly sentenced him to life imprisonment based upon his status as a recidivist when he was not represented by counsel in a prior probation revocation hearing. For the reasons explained below, we affirm Elrod's conviction, vacate his sentence, and remand this case to the trial court with instruction.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

> is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that on February 21, 1992,[1] a special agent with

---

[1] Following his May 1992 jury trial, Elrod's trial counsel filed a timely motion for new trial. Over one year later, in July 1993, the trial transcript had not been completed, but new appellate counsel (Louis M. Turchiarelli) had been appointed. In August 1993, Turchiarelli asked the trial court clerk for certified copies of the entire file "to assist in the appeal." From the record before us, Turchiarelli took no further action in the case. In 1996, Elrod filed a pro se motion to modify his life sentence that was based upon a prior felony conviction that was never ruled upon. In August 2000, the State Board of Pardons and Paroles filed a "Notice of Final Decision to Parole" Elrod effective August 10, 2000. In September 2006, the State Board of Pardons and Paroles filed a second "Notice of Final Decision of Parole" with an effective date of September 14, 2006, with a special condition banishing him from Cherokee County. Due to a parole violation, Elrod was placed back in custody. In May 2018, Elrod filed a pro se motion for an out-of-time appeal. The State opposed the motion because the record showed that Elrod was represented by counsel and that his motion for new trial was still pending. Eight days later, the Cherokee County Indigent Defense Office appointed new appellate counsel for Elrod. In July 2018, Elrod's second appellate counsel filed an amended motion for new trial. The trial court heard argument on the motion in October 2018, and entered an order denying it in March 2019. Elrod's second appellate counsel filed a timely notice of appeal from this order, and this

the Georgia Bureau of Investigation, working undercover with a regional drug task force, purchased a piece of crack cocaine for $20 from Elrod. The special agent purchased the crack cocaine when he drove down a street and was approached by Elrod, who asked him what he "was looking for"; the special agent recorded the purchase on a hidden video camera. Although the agent had never seen Elrod before and did not arrest him until "about a month and a half later," the special agent testified that he had no doubt "whatsoever" that Elrod was the person from whom he purchased the crack cocaine. The videotape of the transaction was played for the jury at trial, and the special agent testified that the person shown in the videotape was Elrod. He testified that he later learned Elrod's name because somebody told him.

The special agent testified that he purchased the cocaine in hard form, but crushed it to see if it would become powder because he wanted to make sure that it appeared to be real cocaine and was not "soap or something like that." After the purchase, he placed the ziplock bag of cocaine into another ziplock bag and labeled the outside with the date, time, and street name where he purchased it. He also conducted a field test on the substance, and it was positive for cocaine. It remained

direct appeal is from the trial court's 2019 denial of Elrod's motion for a new trial. Elrod makes no claim of error in connection with the 16-year delay for his motion for new trial to be heard.

3

in his possession for about a week until he took it to a specific person at the State Crime Lab to be analyzed. This person testified that she worked in the Drug Identification Section of the GBI, held a bachelor's and master's degree in chemistry, and had completed the training program offered by the Drug Identification Section of the GBI. She testified that she received a ziplock bag from the special agent containing "white powder." She performed three analytical tests and determined that the substance, which weighed .2 grams, was cocaine.

1. Elrod contends that this evidence is insufficient to support his conviction because the State failed to prove that the substance purchased by the special agent "was in fact cocaine." In support of this contention, Elrod points to the Crime Lab employee's failure to identify State's Exhibit 2 (the ziplock bag containing the substance purchased by the special agent) as the substance she received from the agent, the State's failure to present a lab report showing the test results, and the State's failure to tender her as an expert.[2] We find no merit in this contention. First, the State was not required to tender an otherwise qualified expert as such. *Dimauro v. State*, 341 Ga. App. 710, 719-720 (3) (a) (801 SE2d 558) (2017) ("although much

_____

[2] Elrod does not assert that the Crime Lab employee was not qualified to render an expert opinion.

4

preferred for the sake of clarity and certainty and to preclude question, it is not required that an expert be formally tendered") (citation and footnote omitted). Second, it is clear from the entirety of the Crime Lab employee's testimony, viewed in the light most favorable to the verdict, that she tested the substance found in State's Exhibit 2 and found it to be cocaine. Finally, testimony about the testing of a substance found to be cocaine is sufficient to support a conviction in the absence of the admission of a written test report. See *Beck v. State*, 196 Ga. App. 269, 270 (1) - (2) (396 SE2d 59) (1990).

2. Elrod claims that he is entitled to a new trial because the trial court violated OCGA § 17-8-57 in a statement it made while ruling upon his objection to a question posed by the State to the Crime Lab employee. We disagree.

OCGA § 17-8-57 (a) (1) provides: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." A "failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of [OCGA § 17-8-57] shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties."

5

OCGA § 17-8-57 (b).[3] As Elrod failed to object to the trial court's comment at issue, we conduct a review for plain error only.

To show plain error, Elrod "must identify a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, likely affected the outcome of the trial court proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Roberts v. State*, 305 Ga. 257, 263 (4) (824 SE2d 326) (2019). The comment at issue here follows:

> [THE STATE]: Based upon your training and experience, . . . and the tests that you performed, do you have an opinion as to whether the item, which [the special agent] gave you and which has now been marked State's Exhibit 2, . . . was a controlled substance?"
> [ELROD'S COUNSEL]: Objection. If it please the Court, she hasn't even described the tests that she did to them yet, other than just say what the name of them were.
> THE COURT: Well, an expert is permitted to give an opinion, even without doing so, . . . but she'll be subject to cross-examination. Go ahead.

As the trial court's statement was "a permissible clarification of procedure," *Brown v. State*, 302 Ga. 454, 463 (3) (807 SE2d 369) (2017), that did "not address the

---

[3] While this provision became effective in 2015, long after Elrod was tried, the Supreme Court of Georgia has concluded that it "applies retroactively to preclude appellate review of a claim that the trial judge commented on the evidence unless the alleged violation of the statute constitutes plain error that affects the substantive rights of the parties." *Roberts v. State*, 305 Ga. 257, 263 (4), n.4 (824 SE2d 326) (2019).

credibility of witnesses or any fact at issue in the trial," *Roberts*, 305 Ga. at 263 (4), Elrod cannot establish plain error in this case.

3. Elrod contends the trial court erred by failing to give standard jury charges on evidence, direct and circumstantial evidence, and venue. Although he preserved this enumeration of error under the standard in existence at the time the case was tried by reserving his objections at the conclusion of the charge, "he was not relieved from the necessity of requesting instructions other than in those circumstances where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." (Citation and punctuation omitted.) *Powell v. State*, 307 Ga. 96, 100 (2) (834 SE2d 822) (2019). When making this evaluation, we review the charges given by the trial court "as a whole in determining whether there is error." *White v. State*, 281 Ga. 276, 280 (4) (637 SE2d 645) (2006). See also *Powell*, 307 Ga. at 102 (2) (b).

The record shows that the following colloquy took place between the trial court and the parties with regard to jury charges:

> THE COURT: Do either of you have any requests to charge? . . .
> [THE STATE]: No, sir, I haven't. I think the standard requests, under the circumstances and based on the Court's experience, would be the only thing that would be necessary.
> THE COURT: [Defense counsel]?

7

[DEFENSE COUNSEL]: I can't think of any special requests, Judge.

THE COURT: Well, the charge on identity — do you want me to give that?

[DEFENSE COUNSEL]: Well, when I say "special," I don't think anything tricky. I think obviously that's the issue in the case, so that would be the —

THE COURT: (Interposing) So, basically just your normal charge —

[DEFENSE COUNSEL]: (Interposing) Yes, sir.

THE COURT: — on the credibility of witnesses, definition of a crime, definition of this offense and identity, and that's about it?

[DEFENSE COUNSEL]: Right.

THE COURT: All right.

[DEFENSE COUNSEL]: I think that's about it. It shouldn't be too complicated.

Based on the above colloquy, it is clear that Elrod did not ask for the particular charges he contends should have been given on appeal, and we therefore apply the standard of review used by the Supreme Court of Georgia in *Powell*, supra.

(a) With regard to a charge on evidence, the record shows that at the beginning of the trial, the trial court instructed the jury on the nature of evidence (testimony of witnesses, exhibits, and stipulations) and that the indictment, plea of not guilty, and statements of counsel were *not* evidence. In its final charge, the trial court instructed the jury once again that the indictment and Elrod's not guilty plea were not evidence. Viewing the trial court's charge as a whole, we cannot say that its failure to give a

8

pattern charge[4] on evidence in its final instruction to the jury was "harmful and erroneous as a matter of law in that it fail[ed] to provide the jury with the proper guidelines for determining guilt or innocence." (Citation and punctuation omitted.) *Powell*, 307 Ga. at 100 (2).

(b) With regard to a charge on direct and circumstantial evidence, it is well settled that if "the State presents both direct and circumstantial evidence, a trial court must instruct the jury on circumstantial evidence only if requested by the defendant." *Powell*, 307 Ga. at 102 (2) (c). In this case, not only did Elrod fail to request a charge on circumstantial evidence, but the State's case consisted entirely of direct evidence. In his brief, Elrod points to no circumstantial evidence submitted by the State to justify a charge on circumstantial evidence. As all of the evidence was direct, we fail to see how the trial court's failure to charge on direct and circumstantial evidence was "clearly harmful and erroneous as a matter of law." *Powell*, supra, 307 Ga. at 100 (2).

---

[4] Elrod asserts in his brief that the trial court should have instructed the jury as follows with regard to evidence:

> Evidence is the means by which any fact which is put in issue is established or disproved. Evidence includes all the testimony of the witnesses and the exhibits admitted during the trial. (It also includes any facts agrees to by counsel.) It does not include the indictment or opening statements or closing arguments by the attorneys. (*Suggested Pattern Jury Charge (1992)*.

9

(c) Finally, the trial court did not err by failing to charge the jury on venue. "[W]here venue is proven and the trial court charges the jury generally on the law of reasonable doubt, it is not necessary for the court to charge the jury that proof of venue is a material allegation of the indictment." (Citations and punctuation omitted.) *Powell*, 307 Ga. at 102 (2) (d). In this case, the State presented unrebutted evidence showing that the crime occurred in Cherokee County, the trial court charged the jury that the State had "to prove every material allegation of the indictment . . . beyond a reasonable doubt," the indictment alleged that the crime occurred in Cherokee County, and the indictment was provided to the jury during their deliberations. Accordingly, the trial court's failure to charge the jury on venue was not "clearly harmful and erroneous as a matter of law." Id.

4. In his remaining enumeration of error, Elrod argues that the trial court was not authorized to consider a first offender conviction, for which probation was revoked while he was unrepresented by counsel, to impose a recidivist life sentence under former OCGA § 16-13-30 (d) (1992). In this case, the record shows that with regard to Elrod's prior conviction, he was represented by counsel, that a jury found him guilty of selling cocaine, and the trial court gave him a first offender five-year probated sentence. On April 3, 1991, approximately six months later, the trial court

10

revoked his probation, adjudicated him guilty, and sentenced him to six years imprisonment to serve three years. The final disposition form reflects on its face that Elrod pled guilty and that he was not represented by counsel. Elrod objected to use of this conviction to impose a recidivist life sentence.

It is well established that "an uncounseled felony conviction cannot be used for the enhancement of punishment under a state recidivist statute" because it violates the Sixth Amendment. *Scott v. State*, 250 Ga. 195, 198 (1) (d), n.4 (297 SE2d 18) (1982), citing *Burgett v. Texas*, 389 U. S. 109[, 114-115] (88 SCt 258, 19 LE2d 319) (1967).

> In recidivist sentencing, the State bears the burden of showing both the existence of the [conviction] and that the defendant was represented by counsel. . . . If the defendant was not represented by counsel, the State can meet its burden by showing that the defendant waived this right.

(Punctuation omitted.) *Beck v. State*, 283 Ga. 352, 353-354 (2) (658 SE2d 577) (2008). However, "a probationer has no Sixth Amendment right to counsel at a revocation proceeding." *Vaughn v. Rutledge*, 265 Ga. 773, 774 (1) (462 SE2d 132) (1995). Instead, the constitutional right to counsel in a probation revocation proceeding is determined under the due process clause of the Fourteenth Amendment "'on a case-by-case basis.'" Id. at 774 (2), citing *Gagnon v. Scarpelli*, 411 U. S. 778, 790 (III) (93 SCt 1756, 36 LE2d 656) (1973).

11

In determining whether counsel should be appointed to represent a probationer, there is no precise and detailed set of guidelines to be followed. Presumptively,[5] it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. *Gagnon v. Scarpelli*, supra at 790-791 (III).

*Vaughn*, 265 Ga. at 775 (3). Following the Supreme Court of Georgia's 1995 decision in *Vaughn*, the case-by-case due process analysis under the Fourteenth Amendment was used to determine the right to counsel in probation revocation proceedings.[6] See,

---

[5] In *Miller v. Deal*, 295 Ga. 504 (761 SE2d 274) (2014), the Supreme Court of Georgia took care to point out that "the appointment of counsel is only *presumptively* necessary, not *absolutely* required." (Citation and punctuation omitted; emphasis in original.) Id. at 510 (2).

[6] In 2005, OCGA § 17-12-23 (a) (2), providing that a circuit public defender would provide representation to indigent persons in hearings on the revocation of probation in superior court, became effective in Georgia. See *Collins v. State*, 352 Ga.

12

e.g., *Banks v. State*, 275 Ga. App. 326, 328-329 (620 SE2d 581) (2005); *Kitchens v. State*, 234 Ga. App. 785, 785-787 (1) (508 SE2d 176) (1998).

In *Collins v. State*, 352 Ga. App. 151 (834 SE2d 291) (2019), this Court applied the Fourteenth Amendment due process test for the right to counsel in the context of determining whether a felony conviction based upon a revoked first offender probation could be used to enhance a sentence.[7] Id. at 154 (1). As in this case, the probation was revoked prior to the effective date of the statute providing counsel to indigent person in probation revocation proceedings. Id. at 154 (1), n.3. In *Collins*, the probationer admitted during the probation revocation hearing that he committed multiple crimes while on probation and that he also failed to complete his probation requirements. Id. at 154 (1). Based on this fact, as well as the probationer's acknowledgment that he had a right to request counsel, we concluded that the trial court did not err "in considering his prior felony conviction for the purpose of recidivist sentencing." Id.

---

App. 151, 154 (1), n.3 (834 SE2d 291) (2019).

[7] While the State relies upon *Wolcott v. State*, 278 Ga. 664 (604 SE2d 478) (2004), to assert that Elrod had *no* right to counsel in the probation revocation hearing, that case holds only that a probationer has no Sixth Amendment right to counsel in a probation revocation hearing. Id. at 668 (4). It is silent with regard to such right under the due process clause of the Fourteenth Amendment.

13

In this case, neither this Court nor the trial court had the benefit of the transcript of the probation revocation hearing to make a determination of whether Elrod was entitled to counsel in the probation revocation hearing. In the sentencing hearing, Elrod's counsel stated that such a transcript existed and that it showed that Elrod contested his revocation and that his request for counsel was denied. According to Elrod's counsel, the transcript would show that Elrod claimed that his urine sample had been mixed up with another's urine sample and that this other person admitted to Elrod in advance that his test "was going to be dirty."[8] The State asserted that the transcript would show that a witness testified that there was no mix-up of the urine samples, that Elrod's urine sample tested positive for cocaine, and that a counselor testified that Elrod admitted that he had been using cocaine, and that there was another basis for the revocation of his probation based upon "the other rules and conditions of probation."

The trial judge who sentenced Elrod in this case stated he had also conducted the probation revocation hearing and concluded "on the record" that he was not entitled to an appointed attorney. It acknowledged, however, that it "may have done

[8] The samples were apparently taken at a diversion center for the purpose of a drug screen.

14

so incorrectly," even though it believed it had done it "correctly," and that the issue would be preserved for appeal through the recidivist sentence entered in this case. The sentencing judge did not state what analysis he used to determine that Elrod had no right to counsel in the probation revocation hearing. A different trial judge, who ruled on the amended motion for new trial in 2019, concluded that the statute providing a right to counsel in probation revocation hearings did not apply retroactively and found no error in Elrod's recidivist sentence. Although Elrod argued in his amended motion for new trial that he had a due process right to counsel at the probation revocation hearing, the trial judge did not address this argument in its 2019 order denying his motion for a new trial.

From the record currently before us, we cannot say that either the original sentencing judge or the judge ruling on the amended motion for new trial considered whether Elrod's right to counsel under the due process clause of the Fourteenth Amendment was violated during the probation revocation hearing. As neither judge reviewed the probation revocation hearing transcript, and we cannot determine from the record before us whether the proper guidelines were used to determine if Elrod

had a right to counsel in that hearing,[9] we vacate Elrod's sentence and remand this case to the trial court to apply the factors set forth in *Gagnon*, supra, based upon a review of the probation revocation hearing transcript, if it can be obtained. See *Kitchens*, 234 Ga. App. at 787 (1) (remanding case to trial court to make initial determination as to whether probationer was entitled to counsel in revocation proceeding). Compare *Banks*, 275 Ga. App. at 329, n.4 (declining to remand case for determination of whether probationer had right to counsel because appellate court could determine issue from record before it and remand would serve no useful purpose). If the transcript cannot be obtained, the trial should conduct whatever hearing is necessary for it to make appropriate fact-findings, relevant to the *Gagnon* factors, as to whether Elrod was entitled to counsel in the probation revocation

---

[9] We acknowledge that the disposition form, presumably completed after the probation revocation hearing, indicates that Elrod pled guilty, but his attorney asserted in the sentencing hearing that Elrod asserted his innocence at some point during the probation revocation hearing and asked for counsel. Based upon the state of the record presently before us, we are reluctant to conclude that he was not entitled to counsel in the probation revocation hearing based upon the disposition sheet showing a guilty plea. Compare *Collins*, 352 Ga. App. at 154 (1) (prior felony conviction resulting from probation revocation could be used to enhance sentence because record showed that defendant was apprised of his right to request an attorney in the probation revocation hearing and admitted committing the other crimes).

16

hearing. Following the trial court's application of the *Gagnon* factors, it should determine the appropriate sentence for Elrod in this case.

*Judgment affirmed, sentence vacated, and case remanded with direction.* *Barnes, P. J., and Mercier, J., concur.*