**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 26, 2025

S25A0720.  MARROW v. THE STATE.

PINSON, Justice.

Keith Lamont Marrow was convicted of three counts of malice murder and several firearm offenses related to the deaths of Courtney German, William Mullins III, and Shayla Curtis.[1] At trial, Marrow admitted to shooting and killing the three victims but claimed

---

[1] German, Mullins, and Curtis died on April 24, 2017. A Chatham County grand jury returned an indictment charging Marrow with 3 counts of malice murder (Counts 1-3), 6 counts of felony murder (Counts 4-9), 3 counts of aggravated assault (Counts 10-12), 12 counts of possession of a firearm during the commission of a felony (Counts 13-24), and 2 counts of possession of a firearm by a convicted felon (Counts 25-26). After a jury trial from February 11-14, 2019, the jury returned guilty verdicts for each count. The trial court sentenced Marrow to three concurrent sentences of life without parole for each count of malice murder (Counts 1-3); three consecutive sentences of five years to serve in prison for three counts of possession of a firearm during the commission of a felony (Counts 13-15); and a concurrent sentence of five years to serve in prison for one count of possession of a firearm by a convicted felon (Count 25). The remaining counts merged or were vacated by operation of law. Marrow timely filed a motion for new trial which was amended by new counsel. After a hearing, the trial court denied the motion on October 21, 2024. Marrow timely filed a notice of appeal on November 19, 2024, after which Marrow changed

self-defense. On appeal, Marrow contends that the trial court erred by not instructing the jury on voluntary manslaughter; that his trial counsel rendered ineffective assistance in several respects; that the cumulative effect of trial counsel's errors warrants a new trial; and that his counsel at the motion for new trial stage rendered ineffective assistance by not presenting evidence in support of his claims that trial counsel was ineffective. For the reasons that follow, these claims fail, and his convictions and sentences are affirmed.

1. The evidence at trial showed the following. Marrow lived in Florida and was a member of a subset of the Bloods, a criminal street gang. In April 2017, Marrow visited Savannah, Georgia and was staying with German, who was also a member of the Bloods. Marrow spent most of the day preceding the shooting with Charlie Dixon, a friend of German and a former gang member. They went to an apartment complex with other gang members and watched a dice game. At some point, they went outside; Marrow left Dixon for "[n]ot more

counsel again. This appeal was docketed to the April 2025 term of court and submitted for a decision on the briefs.

2

than five minutes," then came back and said "let's go." They then went to Marrow's car and drove to a Wendy's restaurant where German was working. Marrow spoke to German, but Dixon was not part of their conversation. Marrow then told Dixon that he had robbed someone at the apartments earlier using a nine-millimeter gun.

The next morning, Savannah police responded to a shooting at a home on East 31st Street. German, Mullins, and Curtis were found shot to death inside the home. Autopsies were performed on each victim. German had four gunshot wounds, including fatal wounds to his head and neck. Curtis had six gunshot wounds, including fatal wounds to her head, neck, and chest. And Mullins had three gunshot wounds, including fatal wounds to the head and neck.

Investigators collected a loaded .380 pistol, twelve .40-caliber bullet casings, a 9-millimeter bullet casing, .40-caliber ammunition, and various projectiles and fragments from the crime scene. Fingerprints were taken from a Wendy's cup at the crime scene, and the fingerprints were later matched to Marrow.

Meanwhile, a patrol officer in South Carolina detained Marrow

after a high-speed chase that ended when Marrow crashed an SUV, which had been rented by German. After he was detained, Marrow told the South Carolina patrol officer that he "threw a gun out" of the SUV during the chase but the officer did not see Marrow do so and did not find the gun that Marrow said he had thrown out of the window. The officer did find a gun "lodged under the gas pedal" of the SUV and a 9-millimeter magazine, which was a different caliber than the gun that was found in the SUV. This gun, a .40-caliber pistol, was later test-fired by a GBI firearms examiner who determined that the .40-caliber cartridge cases collected at the crime scene had been fired from this gun.

The South Carolina officers read Marrow his *Miranda* rights,[2] and Marrow agreed to speak with the officers. A recording of the interview was admitted into evidence and played for the jury.

Marrow later spoke with Detective Antwan Diggs on two occasions about the shootings in Savannah. Both interviews were recorded, and the recordings were admitted into evidence and played

---

[2] See *Miranda v. Arizona*, 384 US 436 (1966).

for the jury. During the first interview, Marrow told Detective Diggs that he shot the three victims. Marrow said that he and the victims were sitting at a table and smoking marijuana, their guns were on the table, and he "just had a bad vibe." Marrow said he had used ecstasy and smoked marijuana that day, and he believed the other gang members were going to kill him. In the second interview, Marrow said he suffered from anxiety attacks, and Detective Diggs testified that Marrow's anxiety may have made him "more paranoid."

Marrow told the police that he had overhead a conversation between German and someone who went by the nickname "Tabo," and based on this conversation, he thought Tabo told German to kill Marrow. Officer Johnathan Puhala, the supervisor of the gang unit of the Savannah Police Department, identified Tabo as an inmate at Wilcox State Prison. Tabo knew German, Curtis, and Mullins, and had exchanged text messages with them using a contraband cell phone that Tabo had with him inside the prison. Those conversations were mainly about getting more contraband into the prison, and Officer Puhala did not find any evidence that Tabo had ordered

5

German or anyone else to kill Marrow or that the two had "bad blood."

Based on his knowledge of the gang, Officer Puhala opined that an unsanctioned robbery by a gang member would be a violation of gang rules and would require the robber to return what he had taken to the victim. Officer Puhala further opined that such a violation may result in a fight with other gang members but would "[p]robably not" result in the non-compliant gang member being killed.

2. Marrow contends that the trial court erred by failing to instruct the jury on voluntary manslaughter as a lesser offense of malice murder. At the charge conference, Marrow asked for charges on justification and voluntary manslaughter. The court ruled that it would not give the voluntary manslaughter charge because the evidence did not show that Marrow's actions were "the result solely of a sudden violent irresistible passion resulting from serious provocation sufficient to excite such passion of a reasonable person," but that it would charge the jury on justification. In response, defense counsel said, "That's fine, Judge." The court did not charge the jury

on voluntary manslaughter, and defense counsel did not object to the charge as given.

Because Marrow's counsel did not object to the jury charge as given, this claim is reviewed only for plain error. See *Johnson v. State*, 321 Ga. 511, 519 (2025). See also OCGA § 17-8-58(b). To establish plain error, the defendant must show that the trial court committed a legal error that was not affirmatively waived, was clear or obvious beyond reasonable dispute, and affected the defendant's substantial rights. Id. If those requirements are met, this Court has the discretion to remedy the error if it "affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

To warrant a charge on voluntary manslaughter, there must be "slight evidence" that the defendant "acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." *Smith v. State*, 296 Ga. 731, 737 (2015) (cleaned up). See also OCGA

§ 16-5-2(a). But neither "words alone," nor "fear that someone is going to pull a gun[,] nor fighting are the types of provocation which demand a voluntary manslaughter charge." Id. On appeal, Marrow does not cite any specific record evidence to support his claim that a voluntary manslaughter instruction was required, instead relying on broad conclusions that the evidence showed the requisite "provocation" and "passion." At trial, he relied only on evidence from his own statement to support the giving of the voluntary manslaughter charge: that there were guns on the table, and German and Mullins looked at one another and then at Marrow and the guns, then German said Marrow was "not that dumb," a comment that was "offensive." But this evidence — of "words alone" and, at best, the fear of someone "pulli[ng] a gun"— is not the type that requires a voluntary manslaughter instruction. See *Smith,* 296 Ga. at 737. And even considering other evidence from Marrow's statement — that there was some disagreement or animosity between Marrow and German, he overheard that Tabo wanted German to kill Marrow, and there was

8

a "bad vibe" while Marrow and the victims smoked marijuana together — this evidence does not show "serious provocation," see id., and, at best, was slight evidence of Marrow's reasonable belief that he needed to defend himself, see *Calmer v. State*, 309 Ga. 368, 370 (2020).[3] So Marrow has not established that the trial court erred, let alone committed a clear or obvious error by not giving the requested instruction. See, e.g., id. at 737–38. See also *Johnson,* 321 Ga. at 519.

3. Marrow contends that his trial counsel rendered constitutionally ineffective assistance in several respects. To establish ineffective assistance of counsel, Marrow must show both (1) that counsel's performance was professionally deficient and (2) that he was prejudiced as a result. See *Strickland v. Washington*, 466 US 668, 687 (1984). Trial counsel performs deficiently when his action or inaction was "objectively unreasonable . . . considering all the circumstances and in light of prevailing professional norms." *Burke v. State*, 320 Ga. 706, 708 (2025) (citation and punctuation omitted).

---

[3] The trial court instructed the jury on the defense of justification.

Prejudice under *Strickland* means there exists a "reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. With this standard in mind, we address each of Marrow's ineffective assistance claims in turn.

(a) Marrow contends that his trial counsel rendered ineffective assistance when he did not stipulate to Marrow's status as a convicted felon. Instead of a stipulation, the State introduced, without objection, a certified copy of a guilty plea Marrow had entered in Louisiana. In addition to telling the jury that Marrow had entered a guilty plea to the felony offense of "unauthorized use of a motor vehicle," the document read into evidence said that Marrow had "while armed with a dangerous weapon, to wit a firearm, robbed [the victim] of a vehicle." Marrow contends that if his counsel had stipulated to his felony conviction for "unauthorized use of a motor vehicle," the jury would not have heard that he had robbed someone at gunpoint.

Whether or not trial counsel was deficient for not stipulating to the felony conviction to prevent the jury from hearing the details of the charged crime, Marrow has not shown that he was prejudiced

10

by the evidence that he had committed a prior armed robbery. The jury had already heard evidence that Marrow had robbed someone at gunpoint earlier in the day on April 23. The prior conviction was not emphasized in any way, or even mentioned again after the certified conviction was read into the record. And the evidence against him was strong: he admitted to shooting the victims, and there was no evidence that the shooting was justified, other than his own self-serving statement that it was necessary to defend himself because of a "bad vibe" he got from the victims and the presence of firearms in the home. Because Marrow has not established that trial counsel's failure to stipulate to his prior conviction likely affected the outcome of his case, this claim of ineffective assistance fails. See *Jackson v. State*, 317 Ga. 95, 104 (2023) (assuming counsel's performance was deficient, defendant was not prejudiced by counsel's failure to stipulate to his prior felony conviction because the evidence against him was strong, and the State did not emphasize the prior conviction during its case in chief or in closing argument).

11

(b) Marrow contends that trial counsel rendered ineffective assistance when he did not submit a written request to charge the jury on voluntary manslaughter. As mentioned above, counsel requested this instruction during the charge conference but the trial court declined to give it, and counsel did not object to the charge as given.

As discussed above, the trial court did not commit a clear or obvious error by failing to instruct the jury on voluntary manslaughter because there was no evidence that supported giving the charge. So we cannot say that trial counsel's decision not to further pursue a voluntary manslaughter instruction, including by submitting a written request for the instruction, was unreasonable. See *Powell v. State*, 307 Ga. 96, 105 (2019) ("Trial counsel was not deficient for failing to request a charge on voluntary manslaughter because there was no evidence to support the charge").

(c) Marrow contends that his trial counsel was ineffective for failing to present the testimony of three witnesses: Michelle Rayford, Markajsha Jenkins, and Ernie "Jamal" Mobley. Marrow contends that these witnesses would have corroborated his claim of self-

defense. Specifically, he says that Rayford would have testified that she had purchased a firearm for German; that there were firearms in the home where the shooting occurred; that the residents were gang members; that German, Marrow, and someone else had an altercation on the day before the shooting; and that German did not trust Marrow. He says Jenkins would have testified that she gave Marrow money, which created "an issue between" German and Marrow when she told German about it. And he says Mobley would have testified that he "received a phone call from victim German, frantic and scared, asking to switch vehicles."

Even considering the proffer that was made in his motion for new trial, Marrow has not shown that his trial counsel acted below the standard of reasonable professional conduct by not calling these witnesses. The decision as to which witnesses to call, if any, is a matter of trial strategy and will only rise to the level of deficient performance if that decision is "so unreasonable that no competent attorney would have made [the same decision] under similar circumstances." *Butler v. State*, 313 Ga. 675, 684 (2022). Marrow contends

13

that the proffered testimony would have corroborated his claims of self-defense or voluntary manslaughter, but none of the proffered witnesses observed the shooting and, at best, their proffered testimony was cumulative of other testimony that there was tension between Marrow and German leading up to the shooting. So Marrow has failed to show that counsel's decision not to call these witnesses was unreasonable. See id. This claim fails as a result.

(d) Marrow contends his trial counsel was ineffective for failing to preserve an objection to hearsay relayed by Dixon during the trial.

At trial, the prosecutor asked Dixon if Marrow had told Dixon "why he came up here from Florida?" Dixon responded that it was because Marrow was "pretty much homeless" and "doing drugs down there." The prosecutor then asked Dixon, "What type of drugs was he doing in Florida," and Dixon answered, "Well, what I heard was Flakka." Defense counsel objected to hearsay, and the prosecutor asked to "clarify," which the trial court allowed. The prosecutor asked if Dixon had spoken to German "about this," and Dixon said he had. The prosecutor then asked, "Did Courtney tell you what

14

types of drugs the defendant was using," Dixon said yes, and defense counsel objected to "foundation." The jury was sent out, and Marrow's counsel said his objection was to "[t]wo-stage hearsay." The State responded that the testimony was admissible under OCGA § 24-8-804(b)(5), which sets forth an exception to the rule against hearsay for out-of-court statements made by an unavailable witness and "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, or did, procure the availability of the declarant as witness." After the State gave its explanation, Marrow's attorney said, "Not going on that ground, Judge. The question was entirely leading." After a colloquy outside the presence of the jury, the trial court overruled the hearsay objection, said the State could establish a foundation for asking the question, and allowed the State to continue its line of questioning. In front of the jury, Dixon was asked if German had told him "anything about [Marrow's] drug use in Florida," and Dixon said yes. The prosecutor then asked, "What did Courtney tell you?" and Dixon testified without objection

that German told him that Marrow was "on Flakka," a "mind-altering drug."

On appeal, Marrow contends that counsel should have maintained his objection to hearsay because the statement was not admissible under OCGA § 24-8-804(b)(5). Marrow contends that, although German was not available to testify at trial, this witness-tampering hearsay exception did not apply to his statement to Dixon because the reason for the homicide was not to prevent him from testifying. See *Morrell v. State*, 313 Ga. 247, 251 (2022) (to admit a statement under OCGA § 24-8-804(b)(5) the proponent "must prove by a preponderance of the evidence that: (1) the defendant engaged in or acquiesced in wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability") (citation and punctuation omitted).

Even assuming that withdrawing the objection to hearsay was deficient performance, rather than trial strategy, Marrow has not established that he was prejudiced by the hearsay statement that he used the "mind-altering" drug "Flakka" at some point in the past.

16

That statement was somewhat cumulative of properly admitted evidence that he was under the influence of ecstasy and marijuana at the time of the shooting and that these drugs may have made him paranoid, and again, the evidence against Marrow was strong. See *Jennings v. State*, 318 Ga. 579, 588, 590 (2024) (admission of hearsay evidence was harmless because it was cumulative and the other, properly admitted evidence against the defendant was strong, so defendant had not established he was prejudiced by counsel's failure to object to the hearsay).

(e) Marrow contends that the four alleged errors of counsel discussed above had a cumulative prejudicial effect that requires a new trial. We have assumed two errors by counsel — for not stipulating to the prior conviction and for not pursuing the hearsay objection — but Marrow has not explained how these errors, when combined, had any greater effect when assessed cumulatively than they did alone. As discussed above, these assumed errors resulted in the admission of evidence that was cumulative of other, properly admitted

17

evidence and had little bearing on whether the shooting, which Marrow admitted to, was justified or the result of passion sufficient to warrant a voluntary manslaughter charge. Thus, Marrow's claim of cumulative prejudice fails. See, e.g., *Washington v. State*, 320 Ga. 839, 861 (2025) (defendant failed to establish cumulative prejudice warranting a new trial where the assumed errors "resulted in, at most, minor prejudice" and "the trial evidence strongly supported the jury's guilty verdicts").

(f) Finally, Marrow contends that the attorney who represented him at the motion-for-new-trial stage rendered ineffective assistance when he failed to offer evidence to support the above claims of ineffective assistance of trial counsel. Marrow points out that his trial counsel passed away before the hearing on his motion for new trial and that his new attorney failed to provide an alternative to trial counsel's testimony to support these claims. But even assuming that post-conviction counsel performed deficiently by not finding an alternative to trial counsel's testimony as evidentiary support for

18

the claims of ineffective assistance, Marrow has not established prejudice as a result of any such deficiency. For the reasons set out above, we have already concluded based on the existing record that the underlying trial counsel ineffectiveness claims fail, and Marrow has not pointed to or described or even hypothesized the existence of any particular evidence that counsel might have produced at the hearing that could have changed the outcome. See *Arnold v. State*, 321 Ga. 434, 450 (2025) ("Mere speculation is insufficient to establish prejudice in a claim of ineffective assistance of counsel." (quotation marks omitted)). See also *Anthony v. State*, 302 Ga. 546, 554–55 (2017) (because this Court had already concluded on the existing record that the preserved claims of ineffective assistance of trial counsel lacked merit, the defendant could not show he was prejudiced by post-trial counsel's alleged deficient performance for not subpoenaing trial counsel to testify at the hearing on the motion for new trial).

*Judgment affirmed. All the Justices concur.*